**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-00651-JLK

JAMES D. MOORE,

    Plaintiff,

v.

SHAWN MILLER, in his individual and official capacity,
JOHN ROBLEDO, in his individual and official capacity,
THE CITY AND COUNTY OF DENVER, a municipality,

    Defendants.

---

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Kane, J.

Defendants move for partial summary judgment on Mr. Moore's claims against Shawn Miller and John Robledo alleging illegal seizure, malicious prosecution, and vindictive prosecution[1], and his municipal liability claim alleged against the City and County of Denver. Doc. 104. Defendants also seek a ruling on a matter of judicial estoppel. For the reasons that follow, I DENY Defendants' motion in its entirety.

## I.     BACKGROUND

Denver Police Department ("DPD") Officers Shawn Miller and John Robledo ("Defendant Police Officers") arrested Plaintiff James Moore on March 25, 2008. Mr. Moore alleges that Defendant Police Officers unlawfully seized him without probable cause or reasonable suspicion and used excessive force against him in violation of his constitutional

---

[1] Mr. Moore's Response indicates that the parties have stipulated to the dismissal of this claim with each side bearing their own fees and costs and that a stipulated motion is pending. Pl.'s Resp. at 42, fn. 8.

1

rights. The force used during the arrest by Defendant Police Officers rendered Mr. Moore unconscious and CPR was necessary to restart his heart. Mr. Moore also alleges that Defendant City and County of Denver (the "City") caused the alleged constitutional violations by failing to properly hire, train, supervise and/or discipline its Police Officers regarding probable cause and proper use of force. Finally, Mr. Moore alleges that Defendant Police Officers both maliciously and vindictively prosecuted him on charges of assault, disarming a police officer, resisting arrest, and obstruction of government operations. The criminal charges attendant to these last allegations were dismissed without prejudice upon motion of the District Attorney stating "[t]he People are unable to prove this case beyond a reasonable doubt." Motion and Order to Dismiss Case, Defs.' Ex. I.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adamson v. Multi Community Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). A disputed fact is material if it could affect the outcome of the suit under the governing law. *Adamson*, 514 F.3d at 1145. A factual dispute is genuine if a rational jury could find for the nonmoving party on the evidence presented. *Id.* The moving party bears the burden of showing that no genuine issue of material fact exists. *Adamson*, 514 F.3d at 1145. Where, as here, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden by showing a lack of evidence for an essential element of the nonmovant's claim. *Id.* In deciding whether the moving party has carried its burden, I may not weigh the evidence and must view the evidence and draw all reasonable inferences from it in the light most favorable

to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Adamson*, 514 F.3d at 1145. Neither unsupported conclusory allegations nor a mere scintilla of evidence in support of the nonmovant's position are sufficient to create a genuine dispute of fact. *See Mackenzie v. City and County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005); *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997).

As I assess the instant motion according to the summary judgment standard, it is not necessary that Mr. Moore "prove" each legal element of his counterarguments, but rather that he shows that genuine issues of material fact remain and that a reasonable jury could infer from the disputed facts that he is able to prove his claims. *See Carr v. Castle*, 337 F.3d 1221, 1229 n.9 (10th Cir. 2003) ("In the summary judgment context, of course, [the plaintiff's] burden is only that of creating reasonable inferences, not one of proof as such. But any continued repetition of that burden involves an awkward locution, an awkwardness contributed to by the fact that so much of the case law speaks of what a party responding to a Rule 56 motion must 'establish' or 'prove' or 'show.' Whenever this opinion employs such terms, it should therefore be understood as denoting [the plaintiff's] lesser burden of creating reasonable inferences, not the actual burden of persuasion."). In keeping with *Carr*, whenever I might use the terms "establish, "prove," or "show" in this opinion, it should be understood as speaking to Mr. Moore's burden of creating reasonable inferences, not his burden of persuasion.

### III. DISCUSSION

#### A. Judicial Estoppel Does Not Apply.

Relying on events that transpired during Mr. Moore's criminal case, Defendants argue that I should judicially estop Mr. Moore from taking a position in this litigation that he did not resist arrest, assault and/or obstruct Defendant Police Officers. Defs.' Mot. at 27. The doctrine of judicial estoppel protects the integrity of the judicial system by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)(citations omitted). Although there is no one standard test for when to apply the doctrine, courts typically assess whether: (i) a party's later position is clearly inconsistent with its earlier position; (ii) a party has persuaded a court to accept its earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the earlier or the later court was misled; and (iii) a party asserting an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (citing *New Hampshire v. Maine*, 532 U.S. at 750-51). Because of the harsh results that follow from the application of judicial estoppel, trial courts should apply the doctrine in only "the narrowest of circumstances." *Id.* (citations omitted).

Defendants contend that during a motions hearing in his criminal case, Mr. Moore persuaded the court to admit CRE 404(b) evidence over the State's objection by arguing that the evidence was admissible to support his theory of self-defense. Defs.' Mot. at 26. Defendants argue that Mr. Moore's invocation of self-defense amounted to an admission of resistance, obstruction, and assault, *id.* at 25, and point out that such an admission would be at odds with Mr. Moore's position in the present matter, which is that he did not resist,

4

obstruct, or assault the police officers. *Id.* According to Defendants, "the Court ruled that the [404(b)] evidence would be admitted with the limited purpose of allowing argument that Defendant Miller was the aggressor and thus supports Plaintiff's position that he acted in self-defense." *Id.* A review of the transcript, however, reveals that the trial court's decision was not as narrow as Defendants represent, and that misrepresentation is misleading. In articulating the purposes for which he would admit the 404(b) evidence, the trial judge stated, "…what I'm hearing from Counsel is…that the [404(b) evidence] is relevant to rebut the notion that Mr. Moore was in fact either the aggressor in the case or that he resisted the police in the first instance. So that's how I characterize the specific purpose for this evidence to be admissible." Defs.' Mot., Ex. H at 17:5-10. This characterization informs my review of the first two factors that courts consider when determining whether to apply the doctrine of judicial estoppel.

First, the trial judge's ruling does not show that Mr. Moore has taken clearly inconsistent positions with regard to his actions on the night of his arrest. Although self-defense is indeed inconsistent with a general denial, Mr. Moore simply did not take a firm position on his claim of self-defense during the motions hearing. Rather, Mr. Moore signified that he was pursuing two possible theories of defense: self-defense and general denial. *See* Defs.' Mot., Ex. H at 11:3-10. The trial court's ruling reflected Mr. Moore's position, providing that Mr. Moore could submit the 404(b) evidence for two distinct purposes: (i) to support a claim of self-defense by suggesting that he was not the initial aggressor; or (ii) to support a claim of general denial by suggesting that he did not resist arrest at all. Defs.' Mot., Ex. H at 17:5-10. Criminal defendants may pursue multiple defenses, even inconsistent ones. *United*

5

*States v. Trujillo*, 390 F.3d 1267, 1274 (10th Cir. 2004)( "[A] criminal defendant is entitled to instructions on *any* defense, including inconsistent ones, that find support in the evidence and the law and failure to so instruct is reversible error."). Because Mr. Moore did not take a firm position on his claim of self-defense during the motions hearing, his position in the present matter—general denial—is not clearly inconsistent with the stance he took in his criminal case.

Second, because the trial court did not rely solely on Mr. Moore's affirmative defense in admitting the 404(b) evidence, it did not "accept" the claim of self-defense such that judicial acceptance of Mr. Moore's general denial claim in the present matter would create the perception that either this Court or the criminal court was misled. Because I have already determined that Mr. Moroe did not take an inconsistent position, the third factor is not implicated.

Thus, because Mr. Moore has not taken clearly inconsistent positions and the court in his criminal case did not accept his claim of self-defense, I reject Defendants' argument for judicial estoppel.

> B. Qualified Immunity Is Not Available to Defendant Police Officers on Mr. Moore's Illegal Seizure and Malicious Prosecution under the Fourth Amendment Claims; Mr. Moore Cannot Bring a Malicious Prosecution Claim under the Fourteenth Amendment.

Defendant Police Officers argue that they are qualifiedly immune from Mr.

Moore's claims of illegal seizure and malicious prosecution[2]. The doctrine of qualified immunity shields public officials from civil liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Therefore, I resolve a claim of qualified immunity by deciding (1) whether the facts alleged by the plaintiff indicate a violation of a constitutional right; and (2) whether the right at issue was "clearly established" at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

In determining whether a right is "clearly established," the dispositive inquiry is whether it would be clear to a reasonable official that his behavior was illegal. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The Tenth Circuit finds this objective standard satisfied when "a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1248 (10th Cir. 2003). A Fourth Amendment illegal seizure claim requires the plaintiff to show that a seizure occurred and that the seizure was unreasonable. *Childress v. City of Arapaho*, 210 F.3d 1154, 1156 (10th Cir. 2000)(citation omitted). An arrest is a "seizure" under the Fourth Amendment, and it is reasonable where there is probable cause to believe that an offense has been or is being committed. *United States v. Davis*, 197 F.3d 1048, 1051 (10th Cir. 1999). It was clearly established at the time of Mr. Moore's arrest that a police officer violates an arrestee's Fourth Amendment right to be free of

---

[2] Mr. Moore brings his malicious prosecution claim under both the Fourth Amendment and the Fourteenth Amendment. With respect to Mr. Moore's Fourteenth Amendment malicious prosecution theory, Defendant Police Officers present their qualified immunity defense in the alternative, arguing first that such a claim is unavailable even if the facts are precisely as Mr. Moore alleges. The constitutional bases for Mr. Moore's malicious prosecution claims will be discussed separately.

unreasonable seizure "if the officer makes a warrantless arrest without probable cause." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

Here, Mr. Moore argues that there was no probable cause for his arrest and facts in the record support his argument. Pl.'s Resp. Statement of Additional Disputed Facts ¶ 6(collecting independent witnesses' statements about Mr. Moore's actions before and during arrest). As I reject Defendants' argument for judicial estoppel, Mr. Moore's current position that there was no probable cause for arrest is tenable and sufficiently indicates a constitutional rights violation. Therefore, because Mr. Moore submits facts suggesting that Defendant Police Officers arrested him without probable cause, and because the right to be free from unreasonable seizure was clearly established at the time of arrest, I reject Defendant Police Officers' argument that they are qualifiedly immune from Mr. Moore's claim of illegal seizure.

Turning to Mr. Moore's Fourth Amendment malicious prosecution claim, such a claim requires that (i) the defendant caused the plaintiff's continued confinement or prosecution, (ii) the original action terminated in favor of the plaintiff; (iii) no probable cause supported the original arrest, continued confinement, or prosecution; (iv) the defendant acted with malice; and (v) the plaintiff sustained damages. *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008). To determine whether a dismissal constitutes a favorable termination, courts look "to the stated reasons for the dismissal as well as to the circumstances surrounding it in an attempt to determine whether the dismissal indicates the accused's innocence." *Id.* at 803. The plaintiff must prove favorable termination. *Id.* The "dispositive inquiry is whether the failure to proceed implies a lack of reasonable grounds for the prosecution." *Id.* (citations

omitted). For example, where a prosecutor decides that a case cannot be proven beyond a reasonable doubt and moves to dismiss on that basis, the criminal action is favorably terminated in favor of the defendant. *See id.*

Defendants argue that Mr. Moore cannot show that the original action terminated in his favor or that there was no probable cause for his arrest. Defs.' Mot. at 31. As discussed above, the contention that Mr. Moore cannot show that there was no probable cause is meritless. If Mr. Moore can prove his factual allegations are true, there was no probable cause. The issue of probable cause is not suitable for summary judgment in this case and the ultimate veracity of whether it existed remains to be seen. The contention that Mr. Moore cannot show that the original action terminated in his favor also has no basis in law or fact. The dismissal was not entered due to any compromise or plea for mercy by Mr. Moore. Rather, it was the result of a judgment by the prosecutor that the case could not be proven beyond a reasonable doubt. Accordingly, because Mr. Moore has alleged facts sufficient to establish a violation of a clearly established constitutional right, I reject Defendant Police Officers' argument that they are qualifiedly immune from Mr. Moore's Fourth Amendment malicious prosecution claim.

Defendant Police Officers fare better in regard to Mr. Moore's Fourteenth Amendment malicious prosecution theory. Insofar as Mr. Moore's claim for malicious prosecution purports to be additionally grounded in the Fourteenth Amendment, that basis is unavailable irrespective of any potential qualified immunity because an adequate Colorado state law remedy exists. The Fourteenth Amendment makes it unlawful for a state actor to "deprive any person of life, liberty, or property, without due process of law." U.S. Const.

amend. XIV, § 1. "If a state actor's harmful conduct is unauthorized and thus could not be anticipated pre-deprivation, then an adequate post-deprivation remedy—such as a state tort claim—will satisfy due process requirements." *Myers v. Koopman,* 738 F.3d 1190, 1194 (10th Cir.2013)(citing *Becker v. Kroll,* 494 F.3d 904, 921 (10th Cir.2007) (citing *Parratt v. Taylor,* 451 U.S. 527, 535–44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 327 (1986)).

Mr. Moore alleges that the Defendant Police Officers invented facts to create sham probable cause for his arrest. Such lawlessness could not have been anticipated or prevented pre-deprivation, but Colorado law recognizes a claim for a post-deprivation malicious prosecution. *See, e.g., Hewitt v. Rice,* 154 P.3d 408, 411 (Colo.2007) (outlining the elements of a malicious prosecution claim under Colorado law). This state law remedy extinguishes any Fourteenth Amendment ground Mr. Moore might otherwise stand on to state a claim for malicious prosecution.

    C. Municipal Liability—Mr. Moore's Failure to Train and/or Supervise Claim Survives Summary Judgment.

Mr. Moore asserts against the City a claim of municipal liability per 42 U.S.C. § 1983. This species of claim generally requires the plaintiff to establish "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Bd. of Cnty. Comm'rs of Oklahoma Cnty.*, 151 F.3d 1313, 1316 (10th Cir. 1998); *Monell v. Dept. of Social Services,* 436 U.S. 658, 691-92 (1978). The existence of a policy or custom can be established many different ways, including demonstrating the existence of

> (1) a formal regulation or policy statement; (2) an informal custom

10

> amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5)the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 787 (10th Cir. 2010) (citation and quotations omitted). Causation lies where the challenged policy or practice is "closely related to the violation of the plaintiff's federally protected right." Martin A. Schwartz, *Section 1983 Litigation Claims & Defenses*, § 7.06[A] (2013).

The specific theory of municipal liability that Mr. Moore advances to prove that Defendant City has an unconstitutional custom or policy is captioned in his Complaint as a "constitutional failure to train and/or supervise."[3] In his Complaint, Mr. Moore alleges two particular areas in which he claims the City failed to train and/or supervise—use of force and probable cause.[4] Mr. Moore contends both that this failure was the moving force causing the violation of his constitutional rights, and that the failure to train and/or

---

[3] Mr. Moore's allegations are consistent with this label and also with a constitutional failure to discipline theory. Because Mr. Moore's Complaint did not develop a constitutional failure to discipline theory separately from his failure to train and/or supervise theory, however, I likewise do not separately parse a failure to discipline theory. The theories as applied in this case are intertwined in any event, because a demonstrated lack of discipline is relevant to the legality of the training and/or supervision. For example, if supervisors tacitly condone illegal conduct by refraining from disciplining wrongdoers, their supervision is not adequate because it lacks meaning or effect.

[4] Subsumed in his First and Second Claims for Relief, Mr. Moore's statements also include the allegation that the City failed to properly hire its police officers. Although Defendants briefed the hiring issue in their Opening Brief, Mr. Moore did not address it in his Response. I therefore consider any sort of policy-based theory of liability relating to the City's hiring practices as abandoned.

supervise demonstrates a deliberate indifference by the City as to the constitutional rights of its citizens. To establish a claim for failure to train or supervise, Mr. Moore must prove (1) the training or supervision given was inadequate; (2) the officer(s) exceeded constitutional limitations on the use of force; (3) the use of force arose under circumstances that constitute a usual and recurring situation confronting police officers; (4) the inadequate training or supervision demonstrates a deliberate indifference by the municipality as to the rights of the people with whom the police come into contact; and (5) a causal link between constitutional deprivation and the inadequate training or supervision. *Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000). The City argues that Mr. Moore cannot prove elements 1, 4, or 5 with respect to the City's use of force or probable cause training. Mr. Moore disagrees. So do I.

1. Mr. Moore Can Prove that the City's Training/Supervision Was Inadequate.

Mr. Moore's evidence establishes a genuine dispute of material fact as to whether the City's training and/or supervision concerning use of force and probable cause was inadequate. The City's former Independent Monitor, Richard Rosenthal[5], testified that "what I saw, again, was this potential systemic problem where officers were permitted to use inappropriate force on the street, were not held accountable, would lie to Internal Affairs about it and, again, were not held accountable." Rosenthal Dep. Doc. 107-37 at 54. Mr. Rosenthal recounted "a number of cases" that gave him "great concern" about whether officers were properly held accountable for their actions. *Id.* at 57. Stating that Internal Affairs was "particularly weak on force cases," Mr. Rosenthal reported that the same was

---

[5] Mr. Rosenthal served as the City's Independent Monitor from July 2005-January 2012. Therefore, Mr. Rosenthal was the acting independent monitor at the time of Mr. Moore's arrest.

"too willing to accept any statement from an officer and not willing to follow up to try to ensure whether it was truthful." *Id.* at 86. Speaking on a department-wide basis, Mr. Rosenthal averred that the DPD "has not established itself to be able to adequately discipline or terminate officers who should not be police officers." *Id.* at 50.

The testimony of the City's former Manager of Safety, Alvin LaCabe[6], also calls into question whether the City failed to train/supervise regarding force. Mr. LaCabe related that the Police Assessment Resource Center ("PARC"), a consulting firm with experience in use of force policies, recommended improvements regarding the DPD's use of force policies. LaCabe Decl. Doc. 104-11, at ¶ 89. Additionally, Mr. Moore presents the testimony of several citizens who allege to have suffered at the hands of Defendant Miller because of the City's failure to train regarding excessive force.

Defendants correctly point out that some of the incidents alleged in this testimony occurred after Mr. Moore's arrest. As such, the events that postdate Mr. Moore's arrest are chronologically prevented from having provided the City with notice of the allegedly unconstitutional violations and may not serve as indicators of deliberate indifference. The incidents are nonetheless available to bolster Mr. Moore's contention that the training and/or supervision of DPD Officers was inadequate. Defendants do not claim, and there is no evidence to suggest, that the training and/or supervision in place during the alleged excessive force incidents that occurred after Mr. Moore's arrest was different from that which was operative during Mr. Moore's arrest. In any event, at least two relevant incidents predate Mr. Moore's arrest and raise triable questions of fact regarding the adequacy of

---

[6] Mr. LaCabe served as the City's Manager of Safety from August 2003-June 2010. Therefore, Mr. LaCabe was the acting Manager of Safety at the time of Mr. Moore's arrest.

Denver's use of force policies and training and/supervision or thereon. *See* Pl's. Exs. 23-26; 30.

### 2. Mr. Moore Can Prove Deliberate Indifference.

"[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997) (internal quotation marks omitted). Deliberate indifference is demonstrated, "[w]hen the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). The Tenth Circuit has explained that a "showing of specific incidents which establish a pattern of constitutional violations is not necessary to put the City on notice that its training program is inadequate. Rather, evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, is sufficient to trigger municipal liability." *Allen v. Muskogee*, 119 F.3d 837, 842 (10th Cir. 1997). In *Canton*, the Supreme Court explained when inadequate police training constitutes city policy:

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

489 U.S. at 390. The Court illustrated:

> For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

*Id.* at n.10, at 390 (citation omitted).

Here, Mr. Moore's expert witness, Dan Montgomery, testified that "[t]he police tactics and physical force used by the defendant Denver Police Officers on March 25, 2008 to arrest and seize James Moore were not in concert with law enforcement best practices" and that "[t]he training and discipline provided by the Denver Police Department to the defendant Denver Police Officers prior to March 25, 2008 was not in concert with law enforcement best practices. Pl's. Ex. 35-Montgomery Report, p. 11 ¶ 1 & 3. This evidence could permit a reasonable juror to find that the DPD's training program failed to instruct its officers appropriately concerning the use of force. *See Ortega v. City & County of Denver*, 944 F.Supp.2d 1033, 1035 (D.Colo. 2013)(testimony of defendant police officers that their alleged unconstitutional actions were in accordance with their training precluded summary judgment for municipality of failure to train claim). City policymakers know to a "moral certainty" that police officers will be required to use force during some arrests. The DPD arms its officers with, among other weapons, batons, TASERS, and firearms, in part to facilitate its officers' use of force. Accordingly, the need to train officers in the constitutional limitations on the use of force, can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

15

Defendants claim Mr. Montgomery's testimony lacks foundation because Mr. Montgomery only reviewed the training history of Defendant Miller. Defendants have not claimed or provided any evidence to suggest, however, that Defendant Robledo's training was different from Defendant Miller's or that the DPD's general training is different from what Defendant Miller received. Further, Mr. Montgomery reviewed several Internal Affairs files and concluded from those records that the DPD does not "train police officers in officer survival training and stress inoculation training." Pl's. Ex. 36-Montgomery Rebuttal, p.4. Mr. Montgomery made a direct link between failure to train in these areas and the improper use of force by explaining that officers need to receive training in officer survival and stress inoculation to insulate them as much as possible from over-reacting to the effects of adrenalin in stressful situations. Mr. Montgomery testified that "this lack of training in two very vital areas of law enforcement contributed to the actions of Officers Miller and Robledo in their encounter with Mr. Moore." Pl's.Ex.35-Montgomery Report, p. 24. I find that Mr. Montgomery's review of Defendant Miller's training history along with his extensive review of Internal Affairs documents, *see id.* at pp.6-7(listing the 81 files reviewed to inform his report), is more than an abundant foundation.

### 3. Mr. Moore Can Prove Causation.

"[I]n order for liability to attach in a failure to train case, 'the identified deficiency in a city's training program must be closely related to the ultimate injury,' so that it 'actually caused' the constitutional violation." *Brown v. Gray*, 227 F.3d 1278, 1290 (10th Cir. 2000) (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)). Further, "[i]f a city promulgates a constitutional policy but trains its officers to violate that policy . . . a facially constitutional

policy will not shield the city from liability and a causal connection could be established." *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009).

Causation is satisfied in this case in several ways. First, the plain meaning of Mr. Montgomery's testimony that the DPD's failure to train in officer survival and stress inoculation "*contributed* to the actions of Officers Miller and Robledo in their encounter with Mr. Moore," Pl's.Ex.35-Montgomery Report, p. 24 (emphasis added), is that the training failure was a cause of their actions. Second, there has never been any dispute regarding whether all of the Defendants' actions were consistent with the customs, policies, and practices of Denver and the training Denver provided them. This is further evidenced by the fact that no one was disciplined as a result of Mr. Moore's assault. Therefore, if Defendant Police Officers testify that they acted in accordance with their training and it is found that they committed constitutional violations, the reasonable inference is that, had the City implemented a different training policy on the use of force, Mr. Moore would not have been subjected to the amount force used in this case. *See Ortega*, 944 F.Supp.2d at 1039.

This is enough for Mr. Moore to survive summary judgment and other theories may be available to prove causation at trial.

## IV.    Conclusion

Mr. Moore has come forward with sufficient evidence, taken in the light most favorable to him, to establish all of the challenged elements of his claims, and the Defendants' requests for the application of judicial estoppel and for for partial summary judgment are denied.

DATED:    May 28th, 2014        BY THE COURT:

**s/John L. Kane**
John L. Kane, U.S. Senior District Judge